SHORT BAYOU DRAINAGE DIST. *v.* YAZOO & M. V. R. Co.*

(Division A.   Dec. 5, 1927.   Suggestion of Error Overruled Jan. 30, 1928.)

[115 So. 189.  No. 26609.]

1. DRAINS. *Drainage district held liable for expenses of railroad in opening track and roadbed and necessary expense of replacing roadway, including bridge (Laws 1914, chapter 269, section 16, amending Laws 1912, chapter 195, section 27).*

Under Laws 1914, chapter 269, section 16, amending Laws 1912, chapter 195, section 27, drainage district is liable for expenses of railroad company for opening its track and roadbed and for all damages sustained as result of construction, including necessary expense of bridge constructed in replacing its roadway, which constitutes an expense or damage directly and proximately resulting from the construction of the work.

2. DRAINS. *Commissioners of drainage district may not arbitrarily refuse to allow railroad's claim for expenses for opening track (Laws 1914, chapter 269, section 16).*

Provision of Laws 1914, chapter 269, section 16, requiring drainage commissioners to allow and pay such part of claim of railroad company for opening track as it sees fit and proper, does not authorize commissioners to arbitrarily refuse to allow such claim.

*Corpus Juris-Cyc. References: Drains, 19CJ, p. 697, n. 41 New.

APPEAL from chancery court of Sunflower county.

HON. J. L. WILLIAMS, Chancellor.

Proceedings by the Yazoo & Mississippi Valley Railroad Company for the allowance of a claim against the Short Bayou Drainage District, wherein the Drainage District also presented a bill against the railroad. Decree for claimant, and the Drainage District appeals. Affirmed.

*H. C. Mounger,* for appellant.

In reference to the expenses of opening the track and removing obstructions, the drainage district is only to pay what it thinks fit and proper. "An itemized bill of the expenses of the railroad company for opening its track shall be made and presented to the commissioners." The bill here presented is a bill for erecting a new bridge, not opening its track. To pay the expenses of opening the track was left to the discretion of the commissioners. They should pay such part as they saw fit and proper. Under the circumstances the commissioners did not see fit and proper to pay any of the bill presented. They might have paid some of the bill for opening the track, if

such bill had been presented, but no such bill is here presented. The commissioners probably reasoned that this was a natural drain across the track, had been so from time immemorial to be taken care of by the railroad company, had been taken care of by the railroad company before the district was organized, and should be now. There is no law compelling the district to pay this bill. This question has not been passed on by our court; that is, there is no decision construing this statute, if in fact it needs any construction. There are numerous decisions from other states bearing on this question, a few of which we wish to call to the attention of the court. See *Chicago B. & Q. Railroad Company* v. *Illinois*, 200 U. S. 561, 50 L. Ed. 597; *Chicago, Burlington & Q. Railway Co.* v. *Board of Supervisors of Appanoose County*, 31 L. R. A. (N. S.) 117 and n.; *Chicago & E. Railway Co.* v. *Luddington* (Ind.), 91 N. E. 939; *Mason City & Ft. D. R. Co.* v. *Wright*, 144 Iowa, 10, 121 N. W. 39; *Chicago, etc., Railway Co.* v. *Minneapolis*, 115 Minn. 460, Ann. Cas. 1912D, 1029; *Wabash* v. *Jackson* (Ind.), 95 N. E. 311.

It makes no difference whether the water passed over, has a well-defined channel, is a watercourse, or whether there was any watercourse there at all or not, if the drainage ditch is put through. Nor does the statute say anything about a watercourse. It may be noted that this same statute puts the duty of providing for the expense of bridges over highways on the board of supervisors. It does not put it on the drainage district. So that neither under the common law nor under this statute is the expense of constructing a new bridge for the railroad company placed on the drainage district. The court should have allowed the bill of the drainage district for removing the obstructions which the railroad company had placed in the ditch and over the drain. No bill is presented here by the railroad company for the expense of opening its tracks as the statute provides. The whole bill is for the erection of a new bridge. We do not think that either under the common law or under the statute,

149 Miss.—3.

the placing of the cost of the new bridge on this little district is contemplated.

Reasoning by analogy, the law places the burden upon the railroad to make proper and easy grades upon the highways, and to erect bridges and keep them in order— Hemingway's Code, sections 7903 (6677). The duty to erect and maintain a bridge applies to a highway laid out after the railroad was constructed. The section is within the police power and so construed does not deprive owners of a previously constructed road of property without due process of law nor impair charter rights. *Illinois Central Railroad Co.* v. *Copiah,* 81 Miss. 685, 33 So. 502.

The fact that a railroad company had constructed its track and put the same in operation before a highway was laid out does not relieve it of its duty under this section to erect a bridge over the track or grade approaches for the highway. *Illinois Central Railroad Co.* v. *Swalm,* 83 Miss. 631, 36 So. 147.

Under sections 7912 (6686), Hemingway's Code, it is the duty of every railroad company to construct and maintain all necessary or proper stock-gaps and cattle-guards where its track passes through enclosed land; and to make and to maintain convenient and suitable crossings over its track for necessary plantation roads. See authorities cited under this section.

*Burch, Minor & McKay,* and *Chapman, Moody & Johnson,* for appellee.

There seems to be no controversy of fact in the case but merely a question of law. The brief of learned counsel for the appellant confines itself to a discussion of the single proposition that the drainage district has the right to require the railroad company to open up its roadbed for the passage of a dredge boat and to project its ditch across the railroad right of way and that the entire expense incident thereto and resulting therefrom must be borne by the railroad alone. The rule of uncompensated

obedience is invoked. Before discussing this proposition of law there are several facts we wish to emphasize. First, there was no natural watercourse here; second, the former opening was ample; third, the drainage district changed this mere depression to an artificial watercourse and brought more water to the point.

The meaning of the term "watercourse" is fairly well established. There must be well-defined banks, a channel emptying into some other stream or body of water, a bed, and it must take care of something more than the mere surface drainage in that particular locality. These essentials have been emphasized by the courts many times. *Webb* v. *Carter* (Mo.), 98 S. W. 776-7; *Hoyt* v. *Hudson*, 27 Wis. 661; *Hutchison* v. *Watson*, 16 Idaho, 484; *Rait* v. *Furrow*, 74 Kans. 101; *St. Louis Co.* v. *Schultz*, 226 Ill. 409; *Quinn* v. *Railroad*, 23 S. D. 126; *Erwin* v. *Railroad*, 90 N. Y. Sup. 317; *Ferris* v. *Wellborn*, 64 Miss. 29.

The first principal case relied upon by the opposition is that of *C. B. & Q. R. Co.* v. *Illinois*, 200 U. S. 561, 50 L. Ed. 597. That case is distinguishable from the case at bar in three important particulars:

(1)  The bridge there in question crossed a recognized watercourse and not, as in the case at bar, a mere depression or slough. That this ground of distinction is important and sound is indicated by a subsequent Illinois case presently to be reviewed.

(2)  The Illinois statute expressly provided that the expense in question should be borne by the railroad company. In Mississippi, as will be presently shown, no such statute exists. On the contrary, our statute expressly provides for compensation to the railroad company.

(3)  It was conceded by the railroad company that the drainage project would "not divert or carry waters which by nature or force of gravity would flow or drain into any other natural watercourse in the drainage district or the vicinity thereof." In the case at bar the drainage project brings to the crossing in question a very large

amount of water which in a state of nature would go else-
where. This difference is made the plainer when it is re-
membered that in a state of nature the water coming to
this crossing could be and was taken care of by a three-
foot culvert while, under the drainage project, a ditch
ten feet deep, twelve feet wide at the bottom and thirty-
two feet wide at the top is required.

That the right of the drainage district to place the ex-
pense of a new bridge on a railroad company, even when
the statute expressly provides therefor, is confined to
cases where such a change is necessary to take care of
water passing there in a state of nature is emphatically
stated by the Illinois supreme court in a later case, viz.,
*People* v. *C. & E. I. R. Co.,* 262 Ill. 501, L. R. A. 1915B. 492.

The case of *C. B. & Q. R. Co.* v. *Illinois,* 200 U. S. 561,
which is appellant's principal reliance here, was, it should
be remembered, an affirmance by the Federal supreme
court of the decree of the Illinois state court. The hold-
ing of the Federal supreme court was merely, of course,
that the decree of the Illinois court conflicted with no
provision of the Federal Constitution. A similar ques-
tion arose in a later case in Illinois and a quite different
conclusion was reached on the ground already alluded
to—that the drainage ditch in the latter case so changed
the original channel as to convert it from a mere stream
into a river and reversed the natural flow of the water.
The court held in the latter case that the statute which
required the railroad company to enlarge its bridge over
a stream along which a drainage ditch is located, where
the span is not sufficient to accommodate the natural
flow of the stream, does not require the enlarging of a
bridge span at the expense of the railroad company over
a stream to accommodate the flow of a river which is to
be diverted into this channel. The court referred to the
earlier case of *C. B. & Q. R. Co.* v. *Illinois,* and pointed
out that the petition of the drainage district in that case
(which was demurred to) alleged specifically that "by

the proposed system of drainage no water other than the water that has its natural drainage in Rob Roy Creek will be carried through the same." *People* v. *C. & E. I. R. Co., supra.*

The cases of *C. B. & Q. R. Co.* v. *Board* (C. C. A.), 182 Fed. 291; 31 L. R. A. (N. S.) 1117; *Mason City* v. *Wright,* 114 Iowa, 10; *Chicago, etc., R. Co.* v. *Minneapolis,* 115 Minn. 460; Ann. Cas. 1912D; *Chicago, etc., R. Co.* v. *Luddington,* 91 N. E. Rep. 939; *Wabash* v. *Jackson* (Ind.), 95 N. E. Rep. 311, relied on by appellant may be easily distinguished from the case at bar by an analysis thereof.

In none of the cases relied upon by the appellant here was there a statute which, like the Mississippi statute, required the drainage district to pay the damage sustained by the railroad. On the other hand, in all of them (with one exception) there was an express provision to the contrary. As to distinction between ordinary drainage districts on the one hand and sanitary drainage districts and road improvement districts on the other, see *People* v. *C. & E. L. R. Co., supra; Hinton* v. *Mayo Drainage Dist.,* 120 Miss. 535; *Witte* v. *Drainage Dist.,* 120 Miss. 645.

Not an exercise of police power. In the *C. & E. I. R. Co. case, supra,* the court disposed of the claim that the right of the drainage district to impose expense of this character on the railroad company would be regarded as an exercise of the police power. See, also, *Bradbury* v. *Vandalia Dist.,* 236 Ill. 48, 19 L. R. A. (N. S.) 999.

The question has twice arisen in Michigan and in each instance the court held that it was a violation of the constitutional rights of the railroad company to compel it to bear the expense incident to the crossing of its track by a drain. *Chicago, etc., R. Co.* v. *Chappel,* 124 Mich. 72; *Peremarquette* v. *Weilman,* 157 Mich. 699.

Argued orally by *H. C. Mounger,* for appellant, and *H. D. Minor,* for appellee.

Cook, J., delivered the opinion of the court.

The Short Bayou drainage district was organized under chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914, and comprises about nine thousand acres. It projected its main drainage canal across the right of way of the appellee, the Yazoo & Mississippi Valley Railroad Company, along a depression and natural drain for surface water under the tracks of the railroad company. Over this depression and natural drain, the railroad company maintained a fourteen-foot trestle for many years, but several years ago it substituted therefor a fill under which there was a culvert three feet in diameter. In order to construct this drainage canal, it was necessary for the railroad company to open its roadbed for the passage of the dredge boat and canal, and to reconstruct its roadbed by building a bridge where the fill and culvert had formerly been. The drainage canal, when completed, was twelve feet wide at the bottom, ten feet deep, and thirty-two feet wide at the top. Prior to the opening of this canal across its right of way, the railroad company submitted to the drainage commissioners an itemized statement of the estimated cost of the work and the damages to be sustained by reason thereof, as provided by section 16, chapter 269, Laws of 1914, and, after completion of the work, it presented its claim for the actual expenses and damages sustained by it, and prayed for an allowance of the claim.

A protest on behalf of the citizens and landowners of the district was filed, and, at the same time, the drainage district presented a bill against the railroad company for six hundred nineteen dollars and twenty-four cents to cover the expense to the district of excavating under the railroad at the point in question. The drainage commissioners, at a regular meeting, considered the claim of the railroad company and disallowed it, and thereupon the railroad company prosecuted its appeal to the chancellor. At the trial in the chancery court, testimony

was introduced by the respective parties, and it appears, without dispute, that the railroad company actually expended the amount in controversy as the direct and necessary result of the construction of the drainage canal across its right of way. It was shown that the railroad company was not permitted to place in the canal the obstructions that would have been necessary to construct a trestle and, consequently, that a bridge was necessary. It was not denied that the amount in question was fairly expended, nor that the bill or claim of the railroad company was correct, but the drainage district merely denied liability therefor. The chancellor rendered a decree in favor of the railroad company against the district for the sum of two thousand six hundred seven dollars and four cents, the amount of the claim, and disallowed claim of the district for excavating across the right of way, and from this decree the district has prosecuted this appeal.

We think the question presented by this appeal may be disposed of by a construction and application of section 16, chapter 269, Laws of 1914, which amended section 27, chapter 195, Laws of 1912, and which reads, in part, as follows:

"Sec. 27. That the commissioners of the district shall have the right and power to carry the ditches, either main or lateral, across any highway, and the board of supervisors shall construct suitable bridges across such ditches. Such ditches may also be carried under or through any railroad track or tramway and in such event the commissioners of the drainage district shall notify the railroad company or owner of said tramway or telegraph or telephone companies, operating lines of telegraph or telephone under or through which it is proposed to carry such ditches, of the probable time at which the contractor will be ready to enter upon the right of way of any of said companies and construct the work thereon. It shall thereupon be the duty of any of said companies or owners of said lines of railway, telegraph

or telephone lines, to send a representative to view the ground with the superintendent of construction or other person appointed by the commissioners and arrange the exact time at which the said work can be most conveniently done. At the time agreed upon, said railroads, or owners thereof, shall remove all rails, ties, stringers and such other obstructions as may be necessary, and such owners of telegraph and telephone lines shall remove all wires, poles and other obstructions, as may be necessary, to permit the excavation of a channel or channels through its right of way. The work so done shall be planned and conducted so as to interfere in the least possible manner with the business of said railroad, telegraph and telephone companies. In case any of such persons or corporations refuse and fail to remove any of said obstructions and to allow the construction of the work through its right of way, it shall be held as delaying the construction of a public work and improvement and shall be liable to a penalty not to exceed fifty dollars ($50) per day for each day of delay thereof, and all damages sustained by the district or contractor, to be recovered in any court having jurisdiction and such penalty shall inure to the drainage district. And such damages shall inure to the person, firm or district damaged. An itemized bill of the expenses of the railroad company for opening its track shall be made and presented to the commissioners of the district at some day previous to the day set for passing through said right of way and a like itemized bill of expense attending the removal of wires and poles of telegraph and telephone companies shall be so presented, including all damages that will be sustained by any of said companies by the construction of said work; whereupon the board of commissioners shall allow and pay such part thereof as it sees fit and proper, from which allowance either of said companies shall have the right of appeal to the chancery court, or chancellor in vacation, but such appeal shall not operate so as to prevent the drainage commissioners from constructing its pro-

posed work through the rights of way of any of said companies.''

Before section 27, chapter 195, Laws of 1912, was amended by section 16, chapter 269, Laws of 1914, it merely provided that the commissioners of the drainage district should have the right to carry its ditches ''under or through any railroad track or tramway.'' As amended by said section 16, chapter 269, Laws of 1914, this section sets forth in detail the mutual rights, duties, and obligations of a drainage district and a railroad company in regard to the passage of drainage districts through or across the right of way of such railroad company, and provides that before the work is done the railroad company shall file with the commissioners of the drainage district an itemized bill of the expenses of the railroad company for opening its track, including therein a statement of all damages that will be sustained by the company as a result of the construction of this work. It is further provided that the board of drainage commissioners shall allow and pay such part of this bill or claim for expenses and damages as it sees fit and proper, and that the railroad company shall have the right of appeal to the chancery court, or the chancellor in vacation, from the action of the board upon such claim. The provision requiring the commissioners to allow and pay such part of the claim as it sees fit and proper does not authorize such commissioners to arbitrarily refuse to allow such claim. The itemized bill or claim for expenses and damages referred to in this section is required to be filed with the commissioners before the work is done, and is necessarily an estimate. After the completion of the work the commissioners should pass upon, and allow and pay such part thereof as is found to be the necessary and direct result of the construction of the drains across the right of way of the company. Under this provision, the drainage commissioners are authorized to fix and determine the amount of expenses and damages that are the direct, necessary, and proximate result of the improvement, and

from the allowance so fixed and made the railroad company has the right to appeal to the chancery court, or the chancellor in vacation, and thereby secure a review of the action of the board in fixing and determining the amount of this expense and damage.

The appellant contends that this provision of the statute only requires the allowance of the expenses of the railroad company for opening its track, and does not cover the expense of restoring the track and roadway or the expense of building a bridge across the drainage canal. We do not think the provisions of this section can be so limited. The expense of replacing the roadbed in a condition that will be safe for the traveling public is, of course, necessary. That to meet this necessity, the construction of a bridge was required is not controverted. The statute provides for the payment by the drainage district of the expenses of the railroad company for opening its track and roadbed, and also for all damages that will be sustained by it as a result of the construction of the drainage work, and the necessary expense of replacing its roadway is manifestly an expense or damage directly and proximately resulting from the construction of the work.

The decree of the court below will therefore be affirmed.

*Affirmed.*